UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

------------------------------------------------------------
                                    )

Global Commodities, Inc.,       )  File No. 24-cv-216
                                   )      (JMB-DJF)
       Plaintiff,           )
                                   )
vs.                           )  Minneapolis, Minnesota
                                   )  January 30, 2025
Capital Distributors, LLC, and  )  10:00 a.m.
Capital Imports, LLC,        )  **DIGITAL RECORDING**
                                   )
       Defendants.         )
------------------------------------------------------------

BEFORE THE HONORABLE DOLCE J. FOSTER
UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

**(STATUS HEARING VIA ZOOM)**

Proceedings recorded by digital recording;
transcript produced by computer.

```
 1
 2     APPEARANCES VIA ZOOM
          For the Plaintiff:          McGeary Cukor
 3                                     MICHAEL CUKOR, ESQ.
                                       150 Morristown Road
 4                                     Suite 205
                                       Bernardsville, New Jersey 07924
 5
                                       Westman, Camplin & Koehler, P.A.
 6                                     AUSTEN P. ZUEGE, ESQ.
                                       121 South Eighth Street
 7                                     Suite 1100
                                       Minneapolis, Minnesota 55402
 8
                                       O'Rourke IP Law P.L.L.C.
 9                                     THOMAS A. O'ROURKE, ESQ.
                                       425 Broadhollow Road
10                                     Suite 120
                                       Melville, New York 11747
11
          For the Defendants:         Stinson LLP
12                                     ADRIANNA MIRELLA CHAVEZ, ESQ.
                                       1850 North Central Avenue
13                                     Suite 2100
                                       Phoenix, Arizona 85004
14
                                       Stinson LLP
15                                     RUTH A. RIVARD, ESQ.
                                       50 South Sixth Street
16                                     Suite 2600
                                       Minneapolis, Minnesota 55402
17
          Transcriber:                ERIN D. DROST, RMR-CRR
18                                     Suite 146
                                       316 North Robert Street
19                                     St. Paul, Minnesota 55101
20
21
22
23
24
25
```

PROCEEDINGS

IN OPEN COURT

(Via Zoom)


1          THE COURT:  Good morning.

2          MS. RIVARD:  Good morning.

3          MR. CUKOR:  Good morning, Your Honor.

4          THE COURT:  This is the matter of Global

5   Commodities, Inc. v. Capital Distributors, LLC, et al.  It

6   is Court File Number 24-cv-216.

7          I would like to hear from just one person from

8   each side of the table.  Please introduce yourself and

9   everyone else who is with you on today's Zoom call.  And

10   we'll start with the plaintiff.

11          MR. CUKOR:  Good morning, Your Honor.  My name is

12   Michael Cukor.  I'm here for the plaintiff Global

13   Commodities, Inc.  And with me is Mr. Tom O'Rourke and

14   also -- sorry -- Mr. Austen Zuege.

15          THE COURT:  All right.  Good morning.

16          MR. CUKOR:  Good morning.

17          THE COURT:  And for the defense.

18          MS. RIVARD:  Good morning, Your Honor.  I'm Ruth

19   Rivard from Stinson LLP.  I represent the defendants in this

20   case.  And with me is my colleague Adrianna Chavez.

21          THE COURT:  Good morning.  So I called this status

conference because both parties -- both sides have requested

opportunities to file pretrial motions, and I wanted to talk

to you all about it.  Sometimes I do interpose a status call

with the parties before motions are filed just to make sure

that everybody is understanding each other, that there has

been an adequate meet and confer, that this is an issue that

really should go to some sort of formal nondispositive

motion practice.

        And so I'm going to start, because we got the call

first from the defense seeking a hearing date for a motion

for a protective order.  That somehow relates to discovery.

I'm not exactly sure.  We've already got a protective order

in the case, so I would assume this is a protective order

related to not wanting to have to respond to certain

discovery requests that have been interposed.  And then

motion to compel answers to interrogatories.

        And so those are the things that the defense

brought forward.  I will let you talk about those potential

motions, Ms. Rivard.

        And I want you to address a couple of things.

First of all, are these motions that you believe -- and I

will take your input into consideration.  I may not go with

it, but do you believe it requires a formal hearing or not

or can it be done on the papers?  And I really would like

the parties to address to what extent they have met and

1    conferred on all of these issues.

2        I will flag for you that if an issue is not

3    brought up in today's conference, I don't want to see it

4    come up in the motion.  So if you've got particular

5    interrogatories that are in dispute, you have to have met

6    and conferred about those specific interrogatories.  And I

7    say this because -- not because of anything the parties in

8    this case have done, but because I have had other cases

9    where parties have said, Oh, we met and conferred, and then

10   they bring a motion and they bring up issues that were not

11   part of that meet and confer and that is problematic.  It is

12   likely to get denied if that's the case.

13       So, Ms. Rivard, please share with me what your

14   concerns are.

15       MS. RIVARD:  Thank you, Your Honor.  So we'll

16   start with motion for protective order.  It is a request to

17   prevent the disclosure of information that we don't think is

18   relevant and is highly personal and private information.

19   And we have talked with opposing counsel about it on a

20   couple of occasions, and they are the ones that suggested we

21   do a full hearing -- a full motion practice as opposed to

22   the more informal process that you allow.  And that

23   probably, you know, is a good way to go get all the

24   information in front of Your Honor so you understand the

25   issues.  So that's the motion for the protective order.

1          The motion --

2          THE COURT:  Can you tell me just briefly what is

3    the nature of the information you've (indiscernible)?

4          MS. RIVARD:  Sure.  So the plaintiff has asked

5    during Mr. Osman's deposition numerous questions about his

6    personal life, his family life, his family members, which he

7    answered.  But then they came and they were asking him his

8    driver's license number, his passport, you know, all this

9    information.  And then they asked for his social security

10   number, and he just refused to give it.  He's had his --

11   personal identity theft happen to him in the past, and he's

12   very protective now of his social security number.

13         So he did offer and give the last four digits of

14   that number, but he has refused to give his social security

15   number.  And I understand his concerns, and I don't see a

16   need for it in this case.  We have talked to opposing

17   counsel about that.  They think there is a need.  And so

18   this is -- this is why we're in front of you, Your Honor.

19         THE COURT:  Okay.

20         MS. RIVARD:  So that's the motion for protective

21   order.

22         THE COURT:  Okay.  I wasn't sure if you were

23   talking about health information or information about mental

24   health or, you know, something like that.  But you are

25   talking about social security?

1          MS. RIVARD:  Yes.

2          THE COURT:  Yeah, okay.

3          Okay.  So you've met and conferred on that, and

4    I'll hear from the other side, from the plaintiffs on that

5    meet and confer.

6          And then if you could please outline for me the --

7    how many interrogatories are we talking about?  Have -- you

8    know, what's been done on that?  That was really frankly

9    what prompted me to do this call because a lot of times I

10   find the parties just aren't talking to each other enough in

11   trying to negotiate resolutions on those kinds of issues.

12         MS. RIVARD:  Right.  So we did have several

13   discussions with opposing counsel on this.  I think we sent

14   them a list of issues back in November, I believe, and have

15   talked off and on through there.  And they have -- they have

16   supplemented discovery since then, but they haven't really

17   resolved the initial -- one of the initial issues.

18         And, Your Honor, quite honestly, this is not a

19   motion that I've drafted, so I would have to defer to -- I

20   believe Adrianna is the one -- Ms. Chavez is the one who's

21   worked on this for exact numbers.  But I would say that

22   there's a handful.

23         And just to preview this, in one of the

24   supplements that they gave us recently, it created some

25   additional issues, so we would have those.  That would be

1    included.  We have met and conferred on those.  We did that

2    earlier this week.  So --

3         But with the ones that we were originally bringing

4    to the Court, the main issue is the plaintiffs responded to

5    numerous interrogatories with -- or, yes, interrogatories

6    with a list of documents, but the list of documents is,

7    like, 500 documents.  And even just an initial look at the

8    first few of those showed that those documents weren't

9    necessarily relevant.

10        And basically the response we got is, Well, the

11   documents are in there.  We're not withholding anything, and

12   you can look through the documents and find which documents

13   we're referring to.

14        And while we will likely look at all 500

15   documents, I don't think it's up to us and our obligation to

16   guess which of those documents they think is relevant to the

17   interrogatory.  And so -- and we've explained this to them

18   on numerous occasions, and all they come back is, We're not

19   withholding anything.  We've given you everything.  You can

20   look through the documents as easily as we can.  And so we

21   would just like them to give us exact documents.

22        Now, they did supplement.  After we had, you know,

23   the first or second meet and confer, they did supplement,

24   and we did then tell them the supplement didn't cure the

25   issue because what they did was they added on numbers but

1    they never took off that whole 500 range.  So they

2    supplemented it with additional documents, and they did

3    provide specific numbers for those documents.  But that

4    whole range of documents is still left in the answer.

5              THE COURT:  Right.  When you say "numbers," are

6    you talking about Bates numbers?

7              MS. RIVARD:  Yeah, I'm sorry.  Document control

8    numbers or Bates numbers, yes.

9              THE COURT:  Go ahead and say what you -- I didn't

10   want to interrupt you, but I was wondering when you said

11   "numbers" what you meant.

12             MS. RIVARD:  Yeah, I'm sorry.  The document

13   control numbers.  So when they originally responded, they

14   said, you know, this -- this range of documents, and it was

15   a range of 500 documents.  And basically because we had this

16   TTAB proceeding, many of those documents were documents from

17   the TTAB.  So they basically were referring us back to the

18   TTAB.

19             But all of the -- but the specific question we

20   asked didn't relate to all of those documents.  It was just

21   one specific issue, and so they just -- that response is

22   still in the answer.  So we don't know which of that 500

23   documents they are referring to as the documents that are

24   responsive to that interrogatory.

25             THE COURT:  Okay.  All right.  Those are the --

1　those are your issues, and it looks like I'm going to have

2　you speak to the other piece of this before I turn to the

3　other side so I can just hear from each side all at once.

4　　　It sounds like the plaintiffs are going to bring

5　or would like to bring both a motion to extend the deadline

6　for amendment of pleadings and a motion to amend pleadings.

7　I would like to hear from you on that.  What was your meet

8　and confer on that and where did you land?

9　　　MS. RIVARD:  And so I just -- I want to -- I'll

10　respond to that, but I also want to point out that just in

11　the last couple weeks, we've had more issues come up in the

12　discovery phase.  And so when we do bring a motion, and we

13　have met and conferred with the other side on this, we

14　will -- we will be bringing up these issues as well, and it

15　had to do with their 30(b)(6) deponent and some of their

16　updated discovery responses.

17　　　And in all of that, because of those responses, we

18　will be asking for a limited extension of discovery.  And

19　I'm saying that now because we think it should be limited to

20　just these new issues that they have brought before us just

21　within the last few days.

22　　　With respect to their -- their request to amend

23　the complaint, we don't think there's anything in that

24　complaint that either is necessary --

25　　　THE COURT:  Sorry.  You're talking about these new

1    issues, but you haven't really defined what they are so now

2    I'm wondering what they are.  So before you move on --

3              MS. RIVARD:  Sure.  I wanted to mention them

4    because I didn't want to be prevented from discussing those.

5              So in the 30(b)(6) deposition that just took place

6    for Global, their witness was unable to answer questions

7    about some of their interrogatory responses.  She was unable

8    to point to information that they say they have about actual

9    confusion, about some of the products that they make that

10   they have discussed.  And so we don't think she was fully

11   prepared, and so we think we need to be able to do another

12   deposition of a corporate representative that could actually

13   answer these questions.

14             THE COURT:  That defines the issue better for me.

15             MS. RIVARD:  Yes.

16             THE COURT:  Were those issues that -- I assume

17   these are issues that you would claim were part of the

18   noticed topics?

19             MS. RIVARD:  Yes.  So the -- and they are key to

20   the case.  So this is issues of actual confusion, and they

21   disclosed just a couple of days before the deposition in

22   response to our interrogatory that asked for, you know,

23   please disclose all issues of actual confusion and provide

24   details, they had just listed a number of stores with names

25   but no details with those names.

1        And so during the deposition, we asked about, you

2    know, give us the details of this supposed, you know, actual

3    confusion, and she didn't know anything about it.  And at

4    one point she said she couldn't answer because it would

5    reveal attorney-client privilege.  And so we -- we have been

6    unable -- you know, we were unable to ask questions about

7    that during the 30(b)(6) deposition.

8        Since that time, they now have produced -- and

9    I've lost count of the number -- a dozen, maybe, written

10    statements from some of these stores and additional ones

11    that purport to talk about actual confusion.  But, one, we

12    didn't have that information before the 30(b)(6) deposition;

13    and, two, she didn't know that information when we did ask

14    about it, so we think it's only fair for us to be able to

15    ask questions about this very lately -- late-produced

16    information on actual confusion.

17        THE COURT:  Okay.  I'm going to hear from you on

18    the amendment issue, and then I'll turn to the other side.

19        MS. RIVARD:  Sure.  So with the motion to amend

20    the complaint, we don't think there's anything in that

21    complaint, much like the last time that they wanted to amend

22    the complaint, that is new or should not -- or could n't

23    have been brought earlier or even in some instances, you

24    know, in the original complaint.

25        Some of the things they're trying to add in were

things that they tried to add in before, like a description

of what they are claiming is their trade dress.  And so we

think, one, they are foreclosed from that because they were

told it was too late to do that the first time around, but,

more importantly, this -- none of this is information --

some of the facts maybe, you know, are new facts from a

deposition; but for the most part, all of that information

that they have added to the complaint was information that

they have had or should have had for a long time.  It's

public information or it's information we disclosed in our

discovery documents.

And so we think it's too late to do that.

Discovery ends in just a couple of days; and, you know,

we've been going on this for a long time.  And it's just a

way, we think, for them to stretch this out, and we'd like

to just get this resolved.

THE COURT:  Okay.  I'll hear from the plaintiffs

on each of these issues.  Let's start with the defendants'

motion for protective order with respect to the matter that

Ms. Rivard discussed.

MR. CUKOR:  Thank you, Your Honor.  It's Michael

Cukor.  I'm going to talk for the plaintiff.  On the issue

of the protective order, I think that the issue is just the

first, I guess, six digits of the social security number of

plaintiff's principal.  And I think that there's certainly

1   good reason to ask for it in this case.  Among them are the

2   principals of the parties had met before; and at the Zoom

3   deposition, the person from plaintiff that had met the

4   alleged principal of defendant before said, That doesn't

5   look anything like the person that I met before.  I think

6   it's a completely different person.

7         And then we learned at the deposition that

8   Mr. Osman has started and closed several businesses called

9   Global Distribution, then Global Distributors, then -- I'm

10   sorry -- Capital Distribution, then Capital Distributors,

11   then Capital Imports with an explanation of I just wanted a

12   fresh start.

13         And then we learned at the deposition that, in

14   fact, Mr. Osman has changed his name, and that he has done

15   business under a completely different name.  And that he has

16   so many businesses he did not know which businesses he used

17   which name with.

18         And I guess the other thing that we learned is

19   that Mr. Osman had testified under oath before that his

20   brother was Mohamed Yusaf.  And then at his deposition he

21   said, No, no, that's not my brother.  That's my cousin.  So

22   there's -- there's a lot of reason to want to know who this

23   person is.

24        THE COURT:  Why is the social security number

25   going to solve that problem?  I don't -- I'm having trouble

1      sort of linking that.

2           MR. CUKOR:  Sure.  We just want to identify that

3      the person that showed up at the deposition is actually

4      Mr. Osman.  And I don't think that we need to have his

5      social security number.  Like, I don't need to have it.  I

6      mean, what we would propose to do is identify a licensed

7      private investigator and the defendants can disclose it

8      directly to the private investigator.  The private

9      investigator can just do an investigation and then return us

10     the results.  We don't need his -- his number.  That's not

11     going to help me in the case.

12          But I do think I want those results, and, you

13     know, it's not that sensitive.  When you get a gym

14     membership, you get this.  Every job you have to disclose

15     your social security number.  So I understand people want to

16     protect it, but we have a protective order in this case, and

17     I'm willing to go further and say I don't even need to see

18     it, just give it to a licensed private investigator that

19     defendants would agree with.

20          THE COURT:  All right.  I'm going to let the

21     parties brief that issue.  I will provide a date so that

22     that can be briefed.

23          Let's move on to the motion to compel answers to

24     interrogatories.  I want to hear your position on the issues

25     that Ms. Rivard laid out with respect to that.

1          MR. CUKOR:  This one is a little odd to me,

2     Your Honor.  And I -- and I did write to the defendants, I

3     don't think we've completed a meet and confer on this

4     because I do not know what you really want.  Like, I do not

5     know what order or relief you will be asking for.  As

6     Ms. Rivard said, we're the plaintiff.  We're going to

7     produce everything that they want.  We're not hiding

8     anything.  We've given them every document.  They --

9          THE COURT:  Yeah, I think what she's saying is

10    that you have given her too many documents.  Like, if you

11    ask, you know, what's your name and somebody sends you

12    10,000 pages of documents with a name in it, that really

13    doesn't answer the question.  And that's the kind of issue

14    that I think that Ms. Rivard is outlining.

15          It sounded like the response was to point to

16    documents, and of course the rules allow you to respond to

17    interrogatories by pointing to documents, but I do think it

18    crosses the line to point to like a pile of documents and to

19    not identify what specific part of the documents that were

20    produced is responsive to which interrogatory.  And that's

21    the -- that's the concern, I think, that she's outlined, and

22    I'm wondering what your response to that concern is.

23          MR. CUKOR:  Sure.  That makes sense.  I don't

24    think Ms. Rivard mentioned the actual interrogatory, which

25    was -- relates to -- I don't -- I'm paraphrasing, but it's

1    like all of your communications with third parties about

2    alleged infringement of your trademark.  So that's the

3    interrogatory, I think, that's at issue.

4         And I think what originally happened was that we

5    provided a -- like, I think there was a folder of that

6    information as it was stored, and there were 500 pages.  And

7    we said, Here's all the communications.  Here they are.

8         And then I think that there was a complaint that

9    500 was too many documents for them to review and that they

10   wanted a table, so I think that what happened is we went

11   back and we provided an updated discovery -- interrogatory

12   response with actual pinpoint cites to, like, the

13   specific -- the specific documents that they were looking

14   for.  And it's not like a question that really requires a

15   narrative.  It's a question of, What are all the

16   correspondence?  And here they all are.

17        And I think I heard Ms. Rivard say that we did do

18   that but that we didn't remove from the interrogatory

19   response the original response that also pointed to 500

20   documents.  Whatever they need, I'm -- I'm happy to give it

21   to them.  I think we gave it to them.  Like, I think we

22   pointed to every single document by Bates number.  I'm

23   really not sure what they are looking for.  It doesn't seem

24   like we need to have a hearing on this.

25             THE COURT:  Yeah, this one does strike me as one

1   that the parties should be able to work out without a formal

2   motion.  It sounds like something that they are not trying

3   to withhold information, and perhaps another meet and confer

4   on this would help resolve the issue.  I'm not sure.  I see

5   that your mute has gone off, Ms. Rivard.  Did you want to

6   respond to this?

7           But I am skeptical that a motion needs to be filed

8   on this particular issue.  Again, this is why I ordered the

9   status conference to begin with is this is the kind of issue

10  that often results from parties not talking enough to each

11  other.

12          MS. RIVARD:  Right.  So we've been talking about

13  this since November, and we've asked repeatedly.  I don't

14  know if those documents that they added refer back to a

15  document that was in those 500 documents that they did

16  before.  But, for example -- and it was -- it was more than

17  one interrogatory, so -- and, again, this is not -- I don't

18  know the details because I'm not handling this motion.

19          THE COURT:  Then perhaps why don't you stop

20  talking, and you can have Ms. Chavez address this.

21          MS. RIVARD:  Absolutely.

22          THE COURT:  Yeah.

23          MS. CHAVEZ:  Thank you, Your Honor.  So there were

24  eight interrogatories that we had conferred about.  And they

25  can kind of be grouped into categories.  So a few of them

related to actual confusion, a few of them related to sale

of goods with the asserted marks. So another example in

addition to the one that Ms. Rivard gave, is we asked for

documents -- you know, we asked for information regarding

the profits and expenses from sale of the goods under the

marks. And, again, they pointed to documents in order to

answer the interrogatory, but the documents don't -- for

example, don't show expenses. So there's no way to

calculate revenue from -- from the goods because we only

have, you know, raw sales data, but we don't have any other

information. And they didn't provide the missing

information in the interrogatory.

THE COURT: Have you identified for the plaintiffs

what specific pieces of information you believe those

documents don't provide?

MS. CHAVEZ: Yes, Your Honor. During the

conferral process, the parties exchanged a number of e-mails

kind of bullet pointing each of the interrogatories and how

they were deficient. And then with each supplement, you

know, we reviewed and we said, Okay, you now identified

pincites of Bates numbers to these documents, but the

documents don't answer X, Y, Z from the interrogatory.

THE COURT: Mr. Cukor?

MR. CUKOR: Cukor.

THE COURT: Sorry.

1          MR. CUKOR:  It means sugar.

2          THE COURT:  Oh, yeah, that makes sense.

3          MR. CUKOR:  Maybe you speak Hungarian.

4          THE COURT:  No.

5          MR. CUKOR:  So, yes, I didn't -- I didn't have

6    that in mind, the profits issue.  I think that this is

7    another one where it doesn't seem like a motion is

8    necessary.

9          I know we're the plaintiff and we have the

10   obligation to produce our documents, so I -- my

11   understanding is we've produced all of the documents that we

12   have with regard to expense and sales.

13         THE COURT:  Okay.  But my -- my sense from what

14   she's saying is that they are asking that -- these are

15   interrogatories, not document requests; right?  And though

16   you can respond to interrogatories with documents, if you

17   don't have documents that answer the interrogatories, you

18   have to answer the interrogatories.

19         MR. CUKOR:  Yes, Your Honor.  To the extent that

20   you have that information.  But what -- what we've told the

21   defendants is the -- the plaintiff does not have a system

22   that calculates profit by part number or profit by brand

23   separately.  So we have our -- we have our sales

24   information, we have our expense information.  We're going

25   to have a damages report, and the damages expert is going to

do that calculation, but we have not done that calculation

now.  And it's unfair to ask kind of lay business people to

make that calculation in advance of a damages report.  And

we can't do it any better than -- than the defendants can.

It's just, you know, they're going to decide about which --

which sales count and which expenses count and how they're

going to allocate them.  That's all damages expert

testimony.  We do not have a report that we can run that

will give them a simple answer to that.

        And we have a deadline for damages experts and

damages disclosures, and we'll do all that.  And if they

complain about it then and say, This is based on some

information that was not produced, that will be a good

argument, but it's not what's going to happen.

        THE COURT:  Okay.  I would like to see another

meet and confer on this.  I do think that there are some

gaps here that need to be closed.  If they don't have the

information, I certainly can't order them to produce it.  If

they don't produce it, then the response to that is, They

didn't produce it, they can't use it in the case; right?

And so, I mean, you do have that tool in your toolbox, and

I'm speaking to the defendants here.  But I think you should

continue talking to make sure that you understand,

Mr. Cukor, what pieces of information they believe need to

be produced that haven't been produced.

1          I would like you to do that meet and confer by the

2     end of the week, because I am going to provide a date for a

3     hearing and with sufficient time for briefing for this

4     issue; but I would like to see the parties work to try to

5     narrow those issues before the motion to compel is filed.

6     All right?

7          Now, I'm going to move on to the motion to amend

8     the pleadings.  I just have some comments about that motion.

9     And I'll just let you know, Mr. Cukor, I am skeptical

10    whenever I have a motion that's brought and I've ruled on it

11    and then the parties bring the same motion a few months

12    later and say, Oh, I've got something new to put on the

13    table.  It does -- because I have already ruled on this

14    motion and I know it was frustrating for you probably that I

15    ruled against you on that, but it really does need to be a

16    brand new issue, not just -- you know, I have seen this

17    happen before where somebody says, Well, somebody commented

18    on this issue in a deposition, so now it's a new issue.  And

19    I don't think that goes quite far enough.  It really does

20    need to be a new issue if you are going to bring a motion to

21    amend at this point, particularly now that we're months past

22    the deadline.

23          And if I were to allow you to amend your

24    complaint, it would completely throw off the pretrial

25    schedule in this case.  I mean, everything goes out the

1    window; right?

2            And so I don't like late-filed motions to amend.

3    I understand that sometimes they are necessary, so you're

4    just going to have to -- and I'll give you a hearing date

5    for that because that does not tend to be an issue that can

6    be handled through a meet and confer.  But I just -- I'm

7    giving you my preliminary thoughts on this, which is, there

8    was a deadline.  The deadline is closed.  You've already

9    gotten an order on this.  I don't want to get a motion for

10   reconsideration on this unless there's something really new

11   that came up.

12           MR. CUKOR:  Do you want to hear from me?

13           THE COURT:  Yeah, you can talk if you want.  I

14   assume you're going to -- I'm going to hear from you more

15   when you file your papers.

16           MR. CUKOR:  Yes.  Let me just preview it and say I

17   do not think that you will be disappointed by this motion.

18   It is not -- it is not a thing that is -- that you outlined

19   as something that would bother you.  It is not a motion for

20   reconsideration.  It is not on the claims that were

21   dismissed already.  In fact, the amended pleading removes

22   the claims that were dismissed.

23           Plaintiff -- I mean defendants filed a motion to

24   dismiss Claims 5, 6, and 7.  They won that.  And those

25   claims are out.

1           This is -- there's basically three different

2     categories of the -- of the motion to amend.

3           The first one is to add existing -- add details to

4     existing Claim 1, which Claim 1 was a review of the

5     Trademark Trial and Appeal Board's decision.  And just to

6     preview a little bit on that, that's already been in the

7     case.  The appeal of the trademark -- the TTAB's decision is

8     never, at a trial court, limited to the -- to the docket --

9     to the evidence that was before the TTAB.  It can be for any

10    reason appealed.

11          And the information that we seek to add is what

12    was learned during the deposition is that there seems to be

13    very strong reason to believe that a significant portion of

14    information that was relied on by the TTAB in terms of

15    declarations from Mr. Osman may not be accurate, and they

16    may have relied on inappropriate information.  So we're just

17    adding details about that.  That's the first bucket.

18          The second bucket is to add details to existing

19    Claim 4.  Claim 4 was also never the subject of a motion to

20    dismiss.  It's for unregistered trademark issues.  It's not

21    trade dress.  It's trademark.  And it's been the case since

22    the beginning.

23          In September of last year, I think the plaintiffs

24    gave an updated interrogatory response that had all of this

25    information, and it's just to add the interrogatory response

1    information into the complaint, just to make the details

2    there.  It's not to add a new cause of action.  It's not to

3    do anything different.  It's just to add it.

4              Now, with the third -- do you have a question?

5              THE COURT:  There's a third bucket.  Okay.  Go

6    ahead.  I thought you were done with the buckets.

7              MR. CUKOR:  Okay.  There's one last bucket.  And

8    the last bucket, this one -- this one is to add -- this one

9    is a little different.  There has always been a claim for

10   trademark infringement, but at the deposition that

11   occurred -- at the depositions that occurred in December of

12   last year that I took, I learned that not only do defendants

13   sell a deer branded product that is alleged to be a copy of

14   plaintiff's deer branded product, but they also sell a

15   peacock rice that is now -- that is just like plaintiff's

16   peacock rice branded product.

17             So plaintiff has a peacock branded rice product

18   called TAWUS with a big peacock on the label; and

19   defendants, I found out, sell a AL TAWUS rice with a big

20   peacock on the -- on the bag.  So that does add like

21   additional information to the complaint, and that -- we want

22   to add that to the -- to the -- to the trademark

23   infringement cause of action.

24             And I know that you are sensitive to throwing off

25   the whole schedule, but this, to me, does not seem like

1    anything that requires that.  I think that we can do this

2    discovery in, like, 45 or 60 days from plaintiff's

3    perspective.  I know defendant wants additional discovery,

4    so, like, both parties want additional discovery.  It

5    doesn't seem to take a lot of extra time.

6            I looked at our schedule, and it's supposed to be

7    trial ready in December.  So there's -- there's definitely

8    extra time in the schedule that doesn't seem to need to

9    affect the December trial ready date.

10           From plaintiff's perspective --

11           THE COURT:  It probably will.  The trial ready

12   date is set based on the dispositive motion deadline.  And

13   that's always the District Judges have a determination of

14   how much time they want between those dates, and so I -- if

15   you move out the dispositive motion deadline, the trial

16   ready date will get moved out.  Just --

17           MR. CUKOR:  I don't really think -- the

18   dispositive motion deadline -- one second -- is -- that's --

19   summary judgment is August -- August 15th, I believe.

20           So I don't think that we have to move that

21   deadline very much, or if at all.  I mean, I would work with

22   the defendants to see what discovery they want to do, but

23   this is kind of a -- an easy one to do discovery on.

24           And kind of practically speaking, I think the

25   alternative is that we would have to file a separate action

1    and then move to join them.  And like that would -- that

2    would make it worse.  That's worse for everybody.  So it

3    seems like there's like a real easy solution on that one.

4         But I understand that that one is a little

5    different than the other -- than the other buckets because

6    it is adding things that there may want to be discovery.

7         THE COURT:  Yeah.  Okay.  All right.  So I'd

8    like -- I'll let you bring your motion on that too.  I mean,

9    that's a motion to amend.  Usually you have to bring a

10   motion on that.  Do the parties feel like you're going to

11   have to have oral argument on these?  And I might schedule

12   it even if you don't just depending on how I decide I want

13   to handle the issues after I get the briefing.  So

14   understanding that, I'd just like to hear the parties'

15   preferences on that.

16        And when you do your briefing on this, I want each

17   side to address timing issues.  So if you're going to be

18   seeking more time for discovery to have your interrogatories

19   answered, Ms. Rivard, how much more time do you think you're

20   going to need?  If you think it's going to require more

21   discovery because you -- if I grant the motion to amend,

22   how's that going to impact the schedule?  How much more time

23   does the plaintiff think will be needed?  How much more time

24   does the defendant think will be needed?  So if you all

25   could include that in your briefing, I would appreciate it.

1          The other comment I have for everyone is less is

2     more.  I think often attorneys feel like they get paid by

3     the word.  It is far better for you in terms of how I

4     receive your arguments and how I hear them and far better

5     for your clients if you can be to the point and direct and

6     not try to throw everything in there, but really hone in on

7     the key issues when you do your briefing.

8          So that is what I have to say about that.  I will

9     give you all -- there will be one hearing date for all of

10    these issues, and hopefully we can get it all resolved at

11    the same time.  I'm not going to give that to you today.  I

12    will have my Courtroom Deputy Lindsey reach out to you on

13    scheduling, but hopefully we can get that set up sometime in

14    the near future.

15         I am going to give you time to meet and confer on

16    this.  I'm going to make sure that I build in an extra week

17    of time into the -- before I set the hearing date because I

18    want to have an opportunity for you all to meet and confer

19    again on the interrogatories that are at issue.  Okay?

20         MS. RIVARD:  Yes.  Thank you, Your Honor.

21         THE COURT:  Are there any other questions or

22    issues that we should address today from either side?

23         MR. CUKOR:  I just -- if I could get a little

24    clarification.  I hope we can continue to meet and confer

25    about the issue of how much time each party thinks that they

1    will need if the amended complaint is allowed.

2          THE COURT:  Yeah, your meet and confer should

3    maybe include that.  That would be great if the parties

4    could agree on some of those timing issues.  The Court would

5    be appreciative --

6          MR. CUKOR:  Right.

7          THE COURT:  -- of any agreement that you can

8    reach.

9          MR. CUKOR:  And I think that Your Honor asked if

10   we wanted to have oral argument or not or what our position

11   was.  And, you know, I think we're going to do a good job on

12   our papers.  If you want oral argument, you can ask -- I'm

13   sure you'll ask for it.

14         THE COURT:  Right.

15         MR. CUKOR:  And if you don't, I don't need to

16   burden you with that.

17         THE COURT:  Okay.  Ms. Rivard, do you have a

18   thought on that?

19         MS. RIVARD:  I agree.  If you think it would be

20   helpful to have oral argument, happy to do that, but,

21   otherwise, I think it's probably issues that can be decided

22   on the briefing.

23         THE COURT:  Okay.  Okay.  Thank you all.  I

24   appreciate your time.  And we'll hear from you soon.

25         MR. CUKOR:  Your Honor, before --

1          THE COURT:  Yes.

2          MR. CUKOR:  -- before we hang up, I thought that

3     they -- I read somewhere that we might discuss about

4     potential settlement talks.  Is that appropriate now or is

5     that not?

6          THE COURT:  Oh, so I always want to talk about

7     settlement with parties, and I ask parties to meet and

8     confer regarding settlement.  I set a meet and confer date

9     based on the information that was provided of July; but if

10    you want -- I'm just going to provide these comments

11    generally for everyone.  This is not a settlement

12    conference.  We're not here to talk settlement today.

13         If you want to talk to me about settlement -- this

14    is the one exception that exists to the no ex parte

15    communications with the Court rule -- either party can reach

16    out to me to give me your views or tell me what you think

17    would be helpful to facilitate settlement.  If you

18    jointly -- I won't -- but I won't schedule a settlement

19    conference unless I feel the case is ripe for it.

20         And I use -- I consider a lot of factors, of

21    course including the parties' input, but other factors in

22    determining when I think a case might be ripe for

23    settlement.  And if I really don't think that it will be

24    productive, then I won't set the settlement conference yet

25    because it's just -- that can be frustrating for me, and

1    it's frustrating and a waste of time for the parties and

2    it's expensive to go through a settlement process without

3    the case being ready for it.

4           So those are my general thoughts on it.  Typically

5    in a case I will do one settlement conference before

6    dispositive motions if the parties want it.  If the parties

7    never feel before dispositive motions that the case can be

8    settled, and I do have cases where it really hinges on the

9    Court's summary judgment order, then I won't set a

10   settlement conference until after dispositive motions are

11   decided.

12          Whether there is an early settlement conference or

13   a predispositive motion settlement conference or not, there

14   will always be a requirement -- and this is part of the

15   Court's rules -- after dispositive motions are decided and

16   before trial, the parties must go through some sort of

17   settlement process, whether -- and it doesn't have to be --

18   I'm using the word "settlement conference" loosely here --

19   mediation, it could be mediation with a private mediator.

20   It is whatever the parties feel is the best forum for that,

21   but you will have to go through some settlement process

22   after dispositive motions if the case survives that long.

23          So those are my comments on that.  I don't know --

24   if you wanted to bring something up with respect to this,

25   Mr. Cukor, I will hear you on it.

1          MR. CUKOR:  I think I was just going to say, like,

2     I've taken a number of cases to trial.  This is not Exxon v.

3     Mobile over here.  You know, it's two family businesses

4     selling rice.  It seems like we should be able to resolve

5     this, but I understand it's not a settlement conference.

6     And when you say an ex parte communication about this is

7     appropriate, how -- is that by letter or by e-mail or just

8     phone call?

9          THE COURT:  Letter, e-mail, phone call, whatever.

10          MR. CUKOR:  Okay.

11          THE COURT:  It needs to be -- and to be clear, in

12     these ex parte communications, I do not want to hear any

13     argument about substantive issues.  I want to hear about

14     settlement only.

15          MR. CUKOR:  Of course.

16          THE COURT:  It's not an invitation to have an ex

17     parte discussion with the Court about anything of substance.

18     All right.

19          MR. CUKOR:  Yes.  Okay.  That's just the

20     clarification I asked for.  Thank you.

21          THE COURT:  Yeah.  Okay.  Anything further?

22          MR. CUKOR:  Not from the plaintiff, Your Honor.

23          MS. CHAVEZ:  Your Honor, just because your

24     comments earlier about topics not being allowed in the

25     briefing if they weren't discussed today.  As part of our

1    motion to compel and some of the documents that have been

2    produced, we also -- the parties haven't adequately

3    conferred about this because we forgot to raise it during

4    our last conferral so I just -- I've only sent an e-mail

5    about it at this point, but we will confer the next time

6    that we do.  Some of the documents that the plaintiff has

7    produced have been labeled attorney's eyes only under the

8    protective order.  And we don't believe that that's an

9    appropriate designation.  And so we've asked them to take a

10   look at those designations, and we will continue to confer

11   about that issue.  But I just wanted to let you know that

12   that was something else that we've been discussing and we

13   will continue to discuss.

14              THE COURT:  That is the kind of issue that I

15   really hate to see motion practice on.  You know --

16              MR. CUKOR:  I don't think you will.

17              THE COURT:  -- the parties can work that out.  It

18   is a waste of everybody's time to brief and argue an issue

19   like that.

20              So I am very hopeful that you can work out a

21   resolution on that.  I would be frankly disappointed if a

22   motion got filed on that topic just because it's just the

23   kind of thing that should be resolved, should be resolvable;

24   and it suggests to me when I see those that the parties

25   aren't adequately attempting to compromise with each other.

1    So please do a thorough meet and confer on that before you

2    file anything.

3              MS. CHAVEZ:  Agreed.  Yes, Your Honor.  Thank you.

4              THE COURT:  Okay.  All right.  If that is all,

5    Court is -- Court will be adjourned.

6              MR. CUKOR:  Thank you, Your Honor.

7              THE COURT:  All right.

8         (Court adjourned)

9                              *     *     *

10

11

12         I, Erin D. Drost, certify that the foregoing is a

13    correct transcript to the best of my ability from the

14    official digital recording in the above-entitled matter.

15

16              Certified by:  *s/ Erin D. Drost*

17                             Erin D. Drost, RMR-CRR

18

19

20

21

22

23

24

25